# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BECKY CHASENSKY,**

        Plaintiff,

        -vs-                    Case No. 11-C-1152

**SCOTT WALKER, individually, and in his
official capacity as Governor of the State of
Wisconsin, and CULLEN WERWIE, individually,
and in his official capacity as a staff member
and spokesman for the administration of
Governor Scott Walker,**

        Defendants.

# DECISION AND ORDER

Becky Chasensky alleges that Governor Scott Walker refused to appoint her to the Register of Deeds position in Marinette County in violation of the anti-discrimination provision in the bankruptcy code. Chasensky also brings claims under Section 1983 against Governor Walker and his press secretary, Cullen Werwie, relating to the refused appointment and for allegedly making various derogatory and demeaning comments about her professional and personal character. The defendants move to dismiss. For the reasons that follow, this motion is granted-in-part and denied-in-part.

**I.    Background**

According to the allegations in her complaint, Chasensky has been employed in the Marinette County Register of Deeds office for twelve years, serving as the Chief Deputy

Register of Deeds since 2001. On or about December 29, 2010, the Register of Deeds for Marinette County announced her mid-term retirement and began efforts, with multiple others, to support the appointment of Ms. Chasensky to the Register of Deeds position. By letter dated January 11, 2011, Ms. Chasensky applied directly to Governor Walker for her appointment. The appointment was subject to the Governor's appointment power under state law to fill a mid-term vacancy to be effective until the next scheduled election.

Chasensky was elevated and served as the acting Register of Deeds effective January 14, 2011. On February 18, Ms. Chasensky was personally interviewed by Eric Esser, Governor Walker's appointments official. Mr. Esser informed Chasensky that he would forward her application directly to Governor Walker for appointment to the position. Thereafter, however, Mr. Esser discovered that Chasensky was involved in a bankruptcy proceeding. *In re Chasensky*, Case No. 2009-30665-SVK-13 (Bankr. E.D. Wis.) Consequently, on April 5, Esser informed Chasensky that Governor Walker would not be appointing her. In a variety of television and print media outlets, Governor Walker and press secretary Werwie stated that Ms. Chasensky did not get the position because of her 2009 bankruptcy proceeding. Moreover, Governor Walker "volunteered to speak on the FOX television network and demeaned Ms. Chasensky's professional and personal character and implied that information learned during an investigation of her was the reason he did not appoint her to the Register of Deed position." Complaint, ¶ 16. This resulted in an "unwanted, highly embarrassing and intrusive media-fest which Chasensky was forced to endure at the Marinette County Register of Deeds office on April 20-21, 2011. Television

reporters and camera crews, newspaper and radio reporters and curious members of the public confronted her and other Marinette County employees with highly intrusive questions about her bankruptcy and professional and personal character and sought derogatory details implied in the defendants' public broadcasts." *Id.* ¶ 17. Chasensky is still employed at the Register of Deeds office, although she claims that she was "threatened with retaliation" if she did not "continue to cover and perform core Register of Deeds duties which Governor Walker's appointee was incapable of performing." *Id.* ¶ 18.

## II. Analysis

In evaluating a motion to dismiss under Rule 12(b)(6),[1] the Court accepts the plaintiff's well-pleaded allegations as true, and draws reasonable inferences in plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests;'" additionally, the complaint's allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC*

---

[1] The defendants also move to dismiss under Rule 12(b)(1) (lack of subject matter jurisdiction) and Rule 12(b)(2) (lack of personal jurisdiction), presumably because their motion implicates sovereign immunity under the Eleventh Amendment. However, a motion to dismiss that raises a sovereign immunity defense is properly brought under Rule 12(b)(6), not Rule 12(b)(1). *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) ("sovereign immunity does not diminish a court's subject-matter jurisdiction. . . . Sovereign immunity concerns the remedy rather than adjudicatory competence").

*v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal citations omitted).

### A. Section 525(a)

Under the bankruptcy code, a "governmental unit" may not "deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act . . . ." 11 U.S.C. § 525(a). The term "governmental unit" is defined to include a "State." 11 U.S.C. § 101(27). Therefore, Ms. Chasensky's claim under § 525(a), ostensibly brought against Governor Walker, implicates the state's sovereign immunity under the Eleventh Amendment. *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985); *Garcia v. City of Chi.*, 24 F.3d 966, 969 (7th Cir. 1994); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants"). Absent waiver or valid abrogation of sovereign immunity, federal courts generally may not entertain a private person's suit against a State. *Va. Office for Prot. & Advocacy v. Stewart*, — U.S. —, 131 S. Ct. 1632, 1638 (2011). However, sovereign immunity in bankruptcy law stands on separate footing since the Supreme Court's decisions

in *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004) and *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006).[2]

In *Hood*, the Supreme Court held that "a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment." 541 U.S. at 443. This is because the "bankruptcy court's jurisdiction is premised on the res, not the persona." *Id.* at 450. In *Katz*, the Court expanded the holding in *Hood*, holding that an adversary claim to set aside preferential transfers was not barred by sovereign immunity. The Court relied on the text of the Bankruptcy Clause, Article I, § 8, cl. 4, which provides that Congress shall have the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States." The Bankruptcy Clause "reflects the States' acquiescence in a grant of congressional power to subordinate to the pressing goal of harmonizing bankruptcy law sovereign immunity defenses that might have been asserted in bankruptcy proceedings." *Katz* at 362. "The scope of this consent was limited; the jurisdiction exercised in bankruptcy proceedings was chiefly *in rem* – a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other jurisdictions." *Id.* at 378. Yet "some exercises of bankruptcy courts' powers . . . unquestionably involved more than mere adjudication of rights in a res. In ratifying the

---

[2] Chasensky mentions *Ex Parte Young*, 209 U.S. 123 (1908) in her brief, under which a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law. Chasensky does not state a claim under *Ex Parte Young* because the relief she requests cannot be characterized as prospective. She does not request reinstatement, and her request for front pay is also barred by the Eleventh Amendment. "When reinstatement is not possible, front pay is generally an appropriate alternative equitable remedy. For purposes of the Eleventh Amendment, however, front pay is not analogous to the prospective relief permitted under *Ex Parte Young* because it 'must be paid from public funds in the state treasury.'" *Campbell v. Ark. Dept. of Correction*, 155 F.3d 950, 962 (8th Cir. 1998) (citation omitted).

Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id.* This theory is known as "consent by ratification." *In re Diaz*, 647 F.3d 1073, 1083 (11th Cir. 2011).

Chasensky argues that her § 525(a) claim is necessary to effectuate *in rem* jurisdiction because the claim, in and of itself, belongs to and is part of the bankruptcy estate. 11 U.S.C. § 541(a)(7); 11 U.S.C. § 1306(a)(1). Therefore, according to Chasensky, her claim relates to the "exercise of exclusive jurisdiction" over her property and the "equitable distribution of that property" among her creditors. *Katz* at 363-64. Even if Chasensky's claim is somehow related to the exercise of *in rem* jurisdiction, the Court finds that the "consent by ratification" theory is inapplicable here. The State is not a creditor to Ms. Chasensky's estate, so the alleged refusal to employ her in, or appoint her to, the Register of Deeds position has nothing to do with ensuring "uniformity in treatment of state and private creditors." *Katz* at 376 n.13; *In re DBSI, Inc.*, 463 B.R. 709, 713 (Bankr. D. Del. 2012) ("These aims, and the desire for uniform application of the bankruptcy laws, would be jeopardized if the states were able to draw resources from the *res* or retain estate property when *other creditors were unable to do so*") (citing *Katz* at 362-64) (emphasis added); Susan E. Hauser, *Necessary Fictions: Bankruptcy Jurisdiction after* Katz *and* Hood, 82 Tul. L. Rev. 1181, 1230 (March 2008) (Under *Katz*, "the states' consent to the Bankruptcy Clause means that they have consented to be treated *equally with other creditors in bankruptcy matters*) (emphasis added). Accordingly, Chasensky's claim is not necessary to effectuate *in*

*rem* jurisdiction. *See, e.g., In re Slayton*, 409 B.R. 897, 904 (Bankr. N.D. Ill. 2009) (§ 525(a) claim survives sovereign immunity defense where the Secretary of State suspended driving privileges and placed a hold on vehicle registrations and license plates in an attempt to collect discharged debts). Indeed, it is impossible to imagine that the States, by ratifying the Constitution and the Bankruptcy Clause contained therein, surrendered their sovereign immunity in matters of state employment, especially when the employment decision is completely unrelated to the State's status as a creditor to the estate. By extension, the Court finds that the waiver of immunity reflected in the plan of the Convention does not extend to the appointment powers of a state's duly elected governor. *Slayton* at 904 n.7 ("Theoretically, at least, a debtor's claim that the government violated section 525 for some other reason might not bear the same close relationship to a proceeding in bankruptcy the Court in *Hood* and *Katz* characterized as *in rem*. In that situation, the outcome on the Eleventh Amendment question could be different"); *Katz* at 378 n.15 ("We do not mean to suggest that every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge upon state sovereign immunity").

As noted above, abrogation is another method to avoid sovereign immunity, but apparently not in the context of bankruptcy. Congress may abrogate state sovereign immunity if it "unequivocally expresse[s] its intent to abrogate" in the text of a statute and acts "pursuant to a valid exercise of power." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). Section 106(a) of the Bankruptcy Code is an attempt to abrogate sovereign immunity with respect to certain sections of the Code, including § 525. In *Katz*, the Court

held that the "relevant question is not whether Congress has 'abrogated' States' immunity [under § 106(a)]. The question, rather, is whether Congress' determination that States should be amenable to such proceedings is within the scope of its power to enact 'Laws on the subject of Bankruptcies.'" *Katz* at 379. Accordingly, the "consent by ratification" inquiry of *Katz* "precedes and obviates the need for the 'congressional abrogation' inquiry." *Diaz* at 1084; Hauser, 82 Tul. L. Rev. at 1185 (describing *Hood* and *Katz* as an "end run" that "places bankruptcy outside the sovereign immunity analysis"). Since the Court already held that "consent by ratification" is inapplicable, it is not necessary to consider Congressional abrogation. "Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws. Its power to do so arises from the Bankruptcy Clause itself; the relevant 'abrogation' is the one effected in the plan of the Convention, not by statute." *Katz* at 379.

### B. Section 1983

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws of the United States. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 459 (7th Cir. 2007). Section 1983 is not an independent source of tort liability. Instead, it creates a cause of action for "the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Narducci v. Moore*, 572 F.3d 313, 318-19 (7th Cir. 2009). Individual liability under § 1983 exists for any person

who, under color of law, was "personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

Chasensky alleges that Governor Walker deprived her of her property interest in the Register of Deeds position without due process of law. This claim must be dismissed because Chasensky never acquired a protected property interest in the Register of Deeds position. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Chasensky's desire for permanent appointment is not enough to establish a protected property interest under state law. *Pleva v. Norquist*, 195 F.3d 905, 915 (7th Cir. 1999) ("Persons in these positions serve at the pleasure of the mayor and the Board, respectively. The discretionary nature of these positions does not give rise to a property interest protected by the Due Process Clause").

"In addition to a property right, the Supreme Court has held that the refusal to reemploy an individual may implicate a liberty interest where the state . . . makes charges against the individual that might seriously damage his standing and associations in the community." *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985) (citing *Roth* at 573). To state such a claim, Chasensky must show that she was stigmatized by the defendants' conduct, that the stigmatizing information was publicly disclosed, and that she suffered a tangible loss of other employment opportunities as a result of public disclosure. *Head v. Chi. Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000). Chasensky cannot satisfy

the third element of this claim because she is still employed as the Chief Deputy Register of Deeds. Thus, Chasensky cannot demonstrate that her "good name, reputation, honor, or integrity" was "called into question in such a way as to make it virtually impossible . . . to find employment in [her] chosen field." *Id.*; *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) ("although [the plaintiff] claims that those statements have made him virtually unemployable in his chosen profession, [the plaintiff] was not discharged from his position . . . after the statements were made and, as far as the record shows, *he continues to work in that position today*") (emphasis added).

Chasensky also claims that the defendants' background investigation violated her right to privacy. The "concept of ordered liberty" protected by due process has been interpreted to include "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The "federal right of confidentiality might in some circumstances be implicated when a state conditions continued employment on the disclosure of private information." *Denius v. Dunlap*, 209 F.3d 944, 955 (7th Cir. 2000) (quoting *Pesce v. J. Sterling Morton High Sch.*, 830 F.2d 789, 797 (7th Cir. 1987)). Liberally construed, Chasensky's complaint states a claim that she was required to disclose confidential private information in exchange for the opportunity to be appointed to the Register of Deeds position. *See Fraternal Order of Police, Lodge No. 5 v. City of Phil.*, 812 F.2d 105, 112 (3d Cir. 1987) ("we do not regard the voluntary nature of the application, even by those who are not currently employed in similar units, as a basis to pretermit analysis of whether the condition of employment violates the applicants' privacy rights").

-10-

Finally, Chasensky's complaint can be construed as alleging that the defendants violated Section 525(a) in their individual capacities under color of state law. Courts are divided as to whether Section 1983 can be used as the vehicle to bring a Section 525(a) bankruptcy discrimination claim. *See In re Potter*, 354 B.R. 301, 317 (Bankr. N.D. Ala. 2006) (collecting cases). The Court will defer ruling on this issue since it was not adequately briefed by either party.

## III. Certification

Federal Rule of Civil Procedure 5.1(b) provides that a court must "certify to the appropriate attorney general that a statute has been questioned" under 28 U.S.C. § 2403. In accordance with Rule 5.1(a), the defendants provided notice to the United States Attorney General that it is challenging the constitutionality of 11 U.S.C. §§ 106(a) and 525(a) as applied to a State. The Court will certify a copy of this opinion to the Attorney General, thereby satisfying the certification requirement. *Buchanan Cnty., Va. v. Blankenship*, 545 F. Supp. 2d 553, 555 n.3 (W.D. Va. 2008).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motion to dismiss [ECF No. 5] is **GRANTED-IN-PART** and **DENIED-IN-PART**, consistent with the foregoing opinion;

2. Plaintiffs' motion for certification [ECF No. 12] is **GRANTED**. The Clerk of Court is directed to send a copy of this Opinion to the Attorney General of the United States;

3. Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **June 12, 2012** at **10:30 am (CST)**. Please be available at that time. The Court will initiate the call.

4. The purpose of the conference call is to establish a scheduling order which will limit the time: to join other parties and to amend the pleadings; to file motions; and to complete discovery;

5. The scheduling order may also: modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; provide for the disclosure or discovery of electronically stored information; include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information is produced; the date or dates for conferences before trial, a final pretrial conference, and trial; and any other matters appropriate in the circumstances of the case.

6. The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4).

7. The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1). Please refer to Attachment A. Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make

the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case.

8. The written report must include the telephone numbers where the parties can be reached for this call.

9. In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the Principles Relating to the Discovery of Electronically Stored Information. Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the Standing Order Relating to the Discovery of Electronically Stored Information in their particular case. (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 16th day of April, 2012.

> **BY THE COURT**:
>
> _____
> **HON. RUDOLPH T. RANDA**
> **U.S. District Judge**