**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**BECKY CHASENSKY,**

                         Plaintiff,

                -vs-                                  Case No. 11-C-1152

**SCOTT WALKER, individually, and in his**
**official capacity as Governor of the State of**
**Wisconsin, and CULLEN WERWIE, individually,**
**and in his official capacity as a staff member**
**and spokesman for the administration of**
**Governor Scott Walker,**

                         Defendants.

---

## DECISION AND ORDER

---

Becky Chasensky's primary claim in this action is that Governor Scott Walker violated the anti-discrimination provision of the bankruptcy code, 11 U.S.C. § 525(a), when he denied Chasensky's application for a mid-term appointment to the Register of Deeds position for Marinette County. In granting Governor Walker's motion to dismiss, the Court held that the States' ratification of the Bankruptcy Clause, Art. I, § 8, cl. 4, did not save Chasensky's claim from being barred by the Eleventh Amendment. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006) ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts"). The Court held that "[e]ven if Chasensky's claim is somehow related to the exercise of *in rem*

jurisdiction . . . the 'consent by ratification' theory is inapplicable here. The State is not a creditor to Ms. Chasensky's estate, so the alleged refusal to employ her in, or appoint her to, the Register of Deeds position has nothing to do with ensuring 'uniformity in treatment of state and private creditors.' Accordingly, Chasensky's claim is not necessary to effectuate *in rem* jurisdiction." *Chasensky v. Walker*, 2012 WL 1287659, at *3 (E.D. Wis. April 16, 2012) (quoting *Katz* at 376 n.13) (internal citations omitted). The Court certified its opinion to the United States Attorney General, who moved to intervene and for rehearing on the issue of whether § 525(a) is unconstitutional as applied to the appointment power of a duly elected State governor.

The United States' primary argument is that the Court should adhere to the doctrine of constitutional avoidance and decide this case on non-constitutional grounds. "It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case. . . . The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). In one sense, constitutional avoidance is a "tool for choosing between competing plausible interpretations, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381-82 (2005). It is also a "fundamental rule of judicial restraint" that federal courts should not entertain questions of constitutionality "unless such

-2-

Case 2:11-cv-01152-RTR   Filed 01/14/13   Page 2 of 7   Document 48

adjudication is avoidable." *Bhd. of Locomotive Eng'r & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R.R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008).

The United States argues that Chasensky's complaint does not state a claim because she was not denied "employment" under § 525(a) (a "governmental unit" may not "deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act . . . solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act . . ."). An interim appointment to the Register of Deeds position is "employment" in the sense that it is a job that earns a salary, but it is also a political appointment that was only available until the next election because the Register of Deeds, a constitutional, elected official of Marinette County, retired. Wis. Const. art. VI, § 4; Wis. Stat. § 59.20(2). In making this appointment, Governor Walker merely acted as a proxy for the electorate, free to consider any factor he saw fit in making his decision. Moreover, an appointment to a "local public office," Wis. Stat. § 19.42(7w)(a), does not result in an employment relationship between the State and the appointee. *See, e.g., Golliday v. City of Benton Harbor*, 216 B.R. 407, 410 (Bankr. W.D. Mich. 1998) (City's refusal to seat debtor to elected position of City Commissioner does not violate § 525(a) because City Commissioners "act independently and are not under the control of the City as employees would be. . . . It would therefore be impossible for the City to deny or terminate his employment"). A more plausible interpretation of the term "employment," and one that

-3-

Case 2:11-cv-01152-RTR   Filed 01/14/13   Page 3 of 7   Document 48

avoids the constitutional issue that the Court previously addressed, is that it was not meant to limit the appointment power of a state governor.

Aside from *Golliday*, the only case addressing the meaning of the term "employment" in this context is *In re Potter*, 354 B.R. 301 (Bankr. N.D. Ala. 2006). In *Potter*, a town's city council elected a new chief of police, displacing the debtor in bankruptcy from that position. "The council's election of a new police chief effectively ended the term of the plaintiff's service as police chief. While the action appears to conform to Ala. Code § 11-43-4,[1] that does not mean it might not also have violated 11 U.S.C. § 525(a). Such action could be interpreted to have terminated the employment of, or discriminated with respect to, the employment of the plaintiff, solely because he had been a debtor in a bankruptcy case." *Id.* at 307. *Potter* is distinguishable for a variety of reasons. The chief of police in *Potter* was displaced from his current position, while Chasensky was denied appointment in the first instance. Also, Chasensky was seeking appointment to an elected position, whereas the chief of police in *Potter* was not elected. Setting aside these factual distinctions, *Potter* – and *Golliday*, for that matter – are different primarily because neither case implicated the Eleventh Amendment and, as a result, the doctrine of constitutional avoidance. As discussed above, an interpretation of the word "employment" that does not encompass an interim appointment by a state governor to an otherwise elected position is a plausible interpretation

---

[1] The bankruptcy judge explained that this section "provides only 'the clerk and such other officers elected by the council shall serve until their successors are elected and qualified.' The statute defines when the terms of appointive city officers will end, but it does not, in itself, vacate their appointments by operation of state law. The language does not *mandate* every new council to 'elect' successors for existing city personnel every election cycle." *Potter* at 307 (emphasis in original).

of the term as it is used in § 525(a). The alternative, as the Court already held, raises serious constitutional doubts. The Court therefore rejects that alternative.

Also before the Court is Chasensky's motion for leave to file an amended complaint which adds a claim under the Equal Protection Clause. This motion is granted. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. The United States' motion for rehearing [ECF No. 42] is **GRANTED**;

2. Chasensky's motion for leave to file an amended complaint [ECF No. 35] is **GRANTED**;

3. Pursuant to Federal Rule of Civil Procedure 16(b), a telephonic scheduling conference is scheduled for **March 13, 2013** at **10:30 am (CST)**. Please be available at that time. The Court will initiate the call.

4. The purpose of the conference call is to establish a scheduling order which will limit the time: to join other parties and to amend the pleadings; to file motions; and to complete discovery;

5. The scheduling order may also: modify the timing for disclosure under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted; provide for the disclosure or discovery of electronically stored information; include any agreements the parties reach for asserting claims of privilege or protection as trial preparation material after information

-5-

is produced; the date or dates for conferences before trial, a final pretrial conference, and trial; and any other matters appropriate in the circumstances of the case.

6. The time limitations set forth in the scheduling order may only be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4).

7. The parties should be prepared to discuss the matters listed in Civil Local Rule 16(a)(1). Please refer to Attachment A. Special attention should also be given to Rule 26(f)(1), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rules 26(f)(2) and (3) mandate that the parties, within fourteen (14) days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in Rules 26(f)(2) and (3), the Court requests that the proposed discovery plan submitted by the parties include one or two sentences stating the nature of the case.

8. The written report must include the telephone numbers where the parties can be reached for this call.

9. In addition, Judge Randa is participating in the Seventh Circuit Electronic Discovery Pilot Program and has adopted the Principles Relating to the Discovery of Electronically Stored Information. Counsel should be fully prepared to discuss methods and techniques to accomplish cooperative fact-finding in their case at the initial status

conference. Before the initial status conference, counsel must also meet and discuss the Principles Relating to the Discovery of Electronically Stored Information. At the initial status conference, counsel must be prepared to discuss what agreements they have reached regarding discovery of Electronically Stored Information ("ESI") and what area of disagreement they have with regard to discovery of ESI. After discussing the matter with counsel, the Court will determine whether to enter the Standing Order Relating to the Discovery of Electronically Stored Information in their particular case. (Please refer to Attachments B & C).

Dated at Milwaukee, Wisconsin, this 14th day of January, 2013.

BY THE COURT:

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**